# CASES

### DECIDED IN THE

# COURT OF APPEALS OF GEORGIA

#### AT THE

## MARCH TERM, 1912

---

### 3850. MOSLEY *v.* THE STATE.

1. The writ of error will not be dismissed because the April adjourned term, 1911, of the trial court is designated in the bill of exceptions as the "July adjourned term, 1911," since it appears from the record that the trial in fact occurred in the month of July, 1911. Where the identity of the trial which it is sought to review by the bill of exceptions with the trial set out in the record is unequivocally established by the record itself, the particular designation applied to the term as a matter of nomenclature may be disregarded, as immaterial.
2. The excerpts from the judge's charge upon which error is assigned would, if standing alone, be amenable to criticism, but, viewing them in connection with the immediate context, and considering the instructions as a whole, the charge was free from error and manifestly not prejudicial to the accused.
3. The evidence authorized the verdict.
4. Verdicts are to be given a reasonable intendment, and not to be rendered ineffectual, when the true meaning of the finding can be readily ascertained. In every instance a verdict should be construed in the light of the maxim that that is certain which can be rendered certain.

DECIDED APRIL 2, 1912.

Indictment for assault with intent to murder; from Tattnall superior court—Judge Sheppard. September 26, 1911.

*H. H. Elders,* for plaintiff in error.

*N. J. Norman, solicitor-general,* contra.

RUSSELL, J. 1. A motion to dismiss the writ of error is made, upon several grounds. All of them, however, can be treated as being only a presentation in different ways of the question whether

the plaintiff in error should not have designated the term of the court at which the accused was tried as the April adjourned term, 1911, of Tattnall superior court, instead of as the July adjourned term, 1911, of the same court, as it is designated in the motion for a new trial and in the bill of exceptions. It is insisted that the laws of Georgia do not provide for any July adjourned term of the superior court of Tattnall county, and that no such term was held, as will appear from an inspection of the brief of the evidence and the charge of the court sent up in the record; also that the motion for a new trial and the bill of exceptions referred to a different term from the one in which the case was tried, and that the State's counsel was not served with the bill of exceptions for the case tried at the April adjourned term, 1911, and no brief of the evidence was filed, approved, and sent up in a case purporting to have been tried at the July adjourned term of the superior court of Tattnall county.

It appears from the bill of exceptions that a case against Enoch Mosley, the present plaintiff in error, was tried at the July adjourned term, 1911, of the superior court of Tattnall county. It is recited therein that the motion for a new trial was set for a hearing on September 2, 1911, and was finally heard and determined, and the motion overruled on September 26, 1911; and the judge certifies these recitals in the bill of exceptions to be true. The plaintiff in error specified as material to be sent up to this court the indictment, the verdict, the judgment, the original and amended motion for new trial, the brief of the evidence, the charge of the court, and the order denying a new trial. An inspection of the record discloses that the brief of evidence bears a caption in which the case is said to belong to a term designated as the April adjourned term, 1911, and the charge of the court is preceded by the following caption:

"The State          In superior court of Tattnall county,
      *vs.*                April adjourned term, 1911.
Enoch Mosley.      Assault with intent to murder."

We bear in mind the rule that when there is conflict between the recitals of a bill of exceptions and the record, the record generally controls. In the present case, however, while there is apparently a difference in the statements certified in the bill of exceptions and the record, we see no real conflict between them.

It is evident that reference is had to the same term of court, the same defendant, and the same trial. The headings of the brief of evidence and of the charge of the court were, no doubt, made by the official stenographer, and he designated the term of court at which the accused was tried as the April adjourned term, 1911. This designation may or may not be technically correct. The judge certifies that the motion for a new trial was set for a hearing September 2, 1911, and was overruled September 26, 1911, and both of these statements are verified by the transcript of the record ordered to be transmitted to this court. In the motion for new trial the term of court is designated as July adjourned term, 1911, of Tattnall superior court. It may be true, technically speaking, that the term was really the April adjourned term of Tattnall superior court, and that this adjourned term was still in session in July, 1911. The term at which the defendant was tried perhaps should have been more correctly designated as the April adjourned term, if this was the fact; but it appears from the record that the defendant was not tried until July 18, 1911; his original motion was made on July 22, 1911, and the solicitor-general acknowledged service of the motion on the latter day. From all of these statements in the record it conclusively appears that the trial which it was sought to review was the trial of which the record speaks. There can be no doubt that the verdict in the record is the verdict which it was sought to review, even if the term of the court should have been designated in the bill of exceptions as the April adjourned term, instead of as the July adjourned term. A comparison of the bill of exceptions and the record relieves the question of any confusion or doubt. It is a mere misnomer as to a term of court thoroughly identified. It is immaterial, and does not afford sufficient ground for dismissing a writ of error. In ordering the record sent up the judge identified it in the bill of exceptions as the motion for new trial upon a verdict and judgment against this defendant for the offense of shooting at another, in which the motion had been set for a hearing on September 2, 1911, and finally heard on September 26, 1911, and this removed any possible doubt as to whether the proceedings in the record appertained to a different case from that actually designated in the bill of exceptions. The cases of *Mixon* v. *State,* 85 *Ga.* 455 (11 S. E. 874), and *Pearce* v. *State,*

86 *Ga.* 507 (12 S. E. 926), are not in point. In *Mixon's* case Judge Blandford, in delivering the opinion of the Supreme Court, said that the record was not brought up in compliance with the act of November 11, 1889, and for that reason the court was not permitted to look into the record; yet he expressed the opinion that if he could look into the record it would be plain that the verdict was demanded by the evidence, and that the defendant's motive in asking a continuance was solely for the purpose of preventing a trial. The writ of error was not dismissed, but the judgment was affirmed. It is inferable that the defect in the record referred to by Judge Blandford was the failure to make a bona fide effort to brief the testimony. In *Pearce's* case the bill of exceptions failed to specify the record, and the certificate was defective; in the instant case the record is specified, and serves to identify itself as the record of the proceeding referred to in the bill of exceptions, and the certificate is in the statutory form.

2. Two exceptions are taken to the charge of the court, based upon excerpts quoted. It is insisted that the court erred in charging as follows: "Now, you determine this question. If the party shot in this case had died, what would be the offense, murder or manslaughter?" The error assigned upon this instruction is that it was prejudicial to the defendant, and left the impression that if the man who was shot had died, the defendant would have been guilty of murder, and that in any event the jury was obliged to infer that the court thought the defendant was guilty of some offense. Viewing this disjointed fragment of the charge by itself, the criticism appears to possess merit, but upon an inspection of the charge of the court as a whole, and in connection with the sentence to which exception is taken, it is quite apparent that it is not subject to either of these objections. Before telling the jury to determine the grade of offense of which the defendant would be guilty, if guilty at all, the judge had charged very fully the law of justifiable homicide, and had told the jury to "take the case and the evidence, and determine whether or not any offense was committed." He recapitulated by charging the jury again that "if the defendant acted in the defense of his brother, against an assault being committed or about to be committed upon him, which amounted to a felony, or what appeared to him to be a felony, he would have the right to defend his brother against it." He then

instructed the jury that the defendant would not be justifiable in firing a gun at the prosecutor if he was not acting under the fears of a reasonable man, and that if they found that to be the case, then they must turn their attention to determining "what crime, if any crime," was committed. It must be borne in mind that the defendant admitted the shooting and sought to justify. The judge, having fully charged the jury on the law of justifiable homicide, and especially upon the subject of the mutual right of brother to defend brother against a felonious assault, correctly told the jury that if the accused was not defending his brother's person against an assault which amounted to a felony, or not acting under the fears of a reasonable man, then he would not be justifiable, but would be guilty either of assault with intent to murder or of shooting at another not in his own defense, as the jury might determine; and it was immediately following these instructions that the sentence to which objection is made was uttered; and, following the language to which exception is taken, the trial judge very fully and fairly explained to the jury the meaning of the sentence in question. The explanation does not, in any sense, withdraw from the jury the theory that the shooting might have been entirely justifiable, nor intimate any opinion on the part of the court as to the truth of the case, or suggest that the jury should find the defendant guilty of some offense in preference to acquitting him.

Exception is taken to the following instruction: "Gentlemen, you are the judges of all these circumstances. It is for you to determine whether or not, in the defense of his brother as claimed by the defendant, it is for you to determine whether or not that defense stands upon the same footing of reason and justice, and amounts to a justification." It is insisted that this instruction left it to the jury to determine, as a matter of law, whether the defendant would be justified in shooting to defend his brother. Even if this excerpt, standing alone, might be subject to the construction which it is sought to place upon it, its language, when considered in connection with the context, could not have misled the jury or have been subject to the interpretation given to it in the assignment of error. Immediately preceding it the judge had charged the jury on the doctrine of mutual defense as applicable to brothers, and instructed them that brothers have the right to

defend and protect each other against assaults; and, following the language objected to, the judge gave this additional charge: "I charge you that the defendant is placed in the same position that his brother would be placed. In other words, he would be allowed to defend his brother in the same manner as his brother would be allowed to defend himself; and if he was in a position to defend himself, and if you find that an assault was being committed upon the brother of the defendant, which amounted to a felony, and the defendant shot to defend his brother from the commission of an assault which amounted to a felony, it would be justifiable, and you would not be authorized to find him guilty of any offense." The judge further charged in the same connection that if the jury had a reasonable doubt that he acted under the fears of a reasonable man, or if the circumstances were such as to excite the fears of a reasonable man at the time the shooting occurred that an assault was being committed upon his brother, which amounted to a felony, it would be the duty of the jury to give him the benefit of the doubt and acquit him. Construing the charge as a whole, it was very fair to the accused, and presented to the jury every phase of defense which could be available to him under the evidence or his statement.

Upon a review of the instructions as a whole, the statement of Chief Justice Bleckley in *Brown* v. *Matthews, 79 Ga.* 1 (4 S. E. 13), seems peculiarly applicable to the present case. "Standing alone, various expressions in it would be amenable to criticism. A charge torn to pieces and scattered in disjointed fragments may seem objectionable, although when put together and considered as a whole, it may be perfectly sound. The full charge being in the record, what it lacks when divided is supplied when the parts are all united. United they stand, divided they fall."

3. The evidence authorized the verdict. It seems that the prosecutor was a stepfather. He had married a widow with several children. According to the testimony of the mother, he supported these children and cared for them as if he had been their father. He was entitled to correct them in a proper manner in case of misbehavior. It is in the evidence that he had the mother's consent to control them. On the morning of the shooting he started to chastise a younger brother of the defendant. Conceding, for the sake of the argument, that there was not sufficient cause

for this stepfather to beat the younger brother; conceding that the stepfather was unnecessarily cruel, and even brutal, the defendant would not have been justified, under the law, in shooting his stepfather with a shotgun, unless, either really or apparently to the defendant, a felony was being committed, or was about to be committed, upon his brother. The jury evidently did not believe that the stepfather intended to commit upon the person of the younger brother either murder or assault with intent to murder. They attributed the shooting of the stepfather by the older brother to passion and resentment, and hence found the defendant guilty of shooting at another. We thus construe the verdict. Sympathizing with the natural spontaneity of the older brother's impulse to repel an attack upon his younger brother, they recommended that the offense be punished as for a misdemeanor, and the judge acted upon this recommendation. Personally, the writer is in the fullest sympathy with the impulse which actuated the older brother in taking the part of his little brother, but, in view of the fact that it is undisputed in the testimony that the stepfather had run for a considerable distance after the first shot was fired and was still running away when the second shot was fired, the jury evidently gave the defendant the benefit of every possible doubt upon the subject of motive. Even if there had been reason for the brother to apprehend that his younger brother was in danger at the time of the first shot, there was no danger when the second shot was fired. The jury might have attributed the second shot to revenge. The verdict shows they gave the defendant the benefit of the doubt and ascribed it to passion without intent to kill.

4. It is insisted, in the brief, that the plaintiff in error was tried for the offense of assault with intent to murder, and that the jury found him guilty of unlawfully "shooting another." The point is made that there is no such criminal offense as that of "shooting another," and that though the defendant could have been convicted of unlawfully shooting *at* another, yet if one unlawfully shoots and hits another, he would be guilty of assault with intent to murder. We do not concede the last statement to be sound. One may shoot another and still be guilty of the statutory offense of shooting at another. It is not a question of marksmanship, but of intent and motive. A bad marksman may be

guilty of assault with intent to murder, or of shooting at another, though his adversary was untouched because the bullet missed the mark. A better marksman may be guilty only of shooting at another, though he shoots down his assailant, if he does not shoot with intent to kill, or if the shooting (though not justifiable) is done in passion, in protecting himself or a brother against a mere assault and battery. One may be justifiable in shooting his assailant in actual or apparent self-defense, though under different circumstances he would not be justified in shooting even if he missed him. As remarked by one of the Justices of the Supreme Court, the statute penalizing shooting at another was not intended to put a premium on bad marksmanship.

However, the general assignment that the verdict is contrary to law does not raise the point that the finding of the jury in this case, that the defendant was "guilty of shooting another not in his own defense," did not authorize the court to pronounce judgment upon the verdict. Verdicts are to be given a reasonable intendment, and not to be rendered ineffectual when the true meaning of the finding can be readily ascertained. In every instance a verdict should be construed in the light of the maxim that that is certain which can be rendered certain. Id certum est quod certum reddi potest. *Southern Ry. Co.* v. *Oliver,* 1 *Ga. App.* 734 (58 S. E. 244). As to the verdict in question, see *Kidd* v. *State,* 10 *Ga. App.* 148-9.

*Judgment affirmed. Pottle, J., not presiding.*