422

## 34463. PATE *v.* THE STATE.

DECIDED JANUARY 17, 1953.

*Frank S. Twitty*, for plaintiff in error.

*Maston O'Neal, Solicitor-General*, contra.

GARDNER, P. J. 1. In the first special ground of his motion for a new trial, the defendant assigns as error the following charge of the court: "Then address yourselves to the question of whether he is guilty of a lesser offense embraced within the allegations of the indictment, and that is the offense of shooting at another. In that connection, the court charges you that any person who shall be guilty of the offense of shooting at another, except in his own defense, or under circumstances of justification, according to the principles of the Code, with a gun, pistol, or other instrument of like kinds shall be punished by confinement in the penitentiary for not less than one nor more than four years." The defendant contends that the foregoing is not a correct statement of the law, and was confusing and misleading to the jury, because the court undertook to charge the provisions of Code § 26-1702, defining the offense of shooting at another, and stated that one would be guilty thereof unless the shooting was done in his own defense "or under circumstances of justification according to the principles of the Code," and the

court nowhere instructed the jury what circumstances would constitute justification under the principles of the Code "so as to authorize a verdict of not guilty because of said circumstances."

This charge is not subject to the criticism urged thereto by the defendant. It stated the provisions of the statute (Code, § 26-1702) in the language thereof, except that the judge added thereto the phrase, "according to the principles of the Code." See *Smith* v. *State*, 44 *Ga. App.* 259 (161 S. E. 267), and *Hart* v. *State*, 55 *Ga. App.* 85 (189 S. E. 547). In the latter case the court held the following charge not error: "It would make no difference, if the defendant or defendants shot at the prosecutor, not in his own defense or under circumstances of justification, according to the principles of the Code, with what intent he shot—whether to kill him or not."

2. In the second special ground, the defendant assigns error on the allowance by the court, over his objection, of certain testimony by the prosecutor, C. T. Nelson, to the effect that the defendant had, a few moments prior to the shooting of the witness, while out in the yard in front of the home of Nelson's mother-in-law, pulled a pistol and said he was going to shoot at some men who were passing by on a tractor, on the ground that the testimony was immaterial and irrelevant, having no bearing on whether or not the defendant was justified in shooting the witness. This ground of the motion is without merit and the court did not err in admitting such testimony.

3. In the third special ground, the defendant contends that the court erred in admitting, over his timely objection that it had no bearing on the issues and did not clarify or illustrate whether the defendant was guilty or innocent, the following testimony of Woodrow Maples, a witness for the State: "I know where Vera Grant lives. On Saturday night, March 25, 1952, the same night that C. T. Nelson got shot, I passed Vera Grant's house. I was traveling on a tractor and Jessie Porterman was with me. We did not notice anything unusual as we passed. We were going from the river to home, and that was after dark." The court did not err in admitting such testimony, which did not tend to harm or prejudice the defendant.

4. In the fourth special ground, the defendant assigns error on the following testimony of the State's witness Porterman:

"I know where Vera Grant lives. On the night that C. T. Nelson got shot, I remember that night. One Saturday night four or five weeks ago; I remember the night they said he got shot. It was on Saturday night, March 24th. I passed Vera Grant's house that night on a tractor between ten and eleven. We were coming from the river, going home. Maples and myself." There is no merit in the defendant's contention that such evidence was illegally admitted and was harmful and prejudicial to him, being irrelevant and not illustrative of any issue involved.

5. In the fifth special ground the defendant assigns error on the court's allowing the witness Darley to testify for the State, contending that he objected thereto on the ground that Darley had sat at the table with the solicitor during the entire trial and had aided in the selection of the jury, that his name was not on the indictment as a witness, and that he remained in the courtroom during the trial, being offered as a witness for the State at the conclusion of the defendant's evidence. This ground is not insisted upon nor mentioned at all in the defendant's brief and argument in this court, and will be treated as abandoned.

6. The evidence tended to show: that the defendant was at the home of the mother-in-law of C. T. Nelson, Vera Grant; that he was out in the yard with Nelson and two other men, and they were talking; that the defendant had a pistol and was drinking and cursing; that the man Nelson went into Vera Grant's kitchen and asked her to fix him something to eat, and while he was in there the defendant came in; that he had, while in the yard, pulled out his pistol and stated that he was going to shoot at some white men who were passing by the house on a tractor; that Vera Grant tried to get the defendant to leave the house and he would not go; that two others came up, R. B. Page and Lucy Page, who were the defendant's aunt and uncle, and they tried to get the defendant to leave, but he remained in there "cussing and raising sand"; and that the witness, C. T. Nelson, then "got him and just pushed him out of the door and shut the door, and when he got outside, he began to shoot." It appeared that Nelson and his mother-in-law, Vera Grant, wanted "him out because he was cursing and raising sand in the house." The evidence authorized the jury to find that, when the defendant was gotten out of the house of Vera Grant, "He started

shooting . . and shot three times," and one of the shots struck the witness, C. T. Nelson. Henry Lee Crump testified on cross-examination that Nelson "had a knife in his hand when they (Nelson and defendant) were back there fussing and fighting . . and he was after Fox with a knife. And that was when Fox went out the door—C. T. had a knife after him—and then when he got out, that is when he shot." Another witness for the State, C. J. Crump, also testified on cross-examination that Nelson had a pocketknife, and that the defendant "kept on backing out of the house and they kept coming on to him, and just about the time he got to the house or the porch, he started shooting . . The knife was shut." Henry Lee Crump, brother of C. J. Crump, was recalled, and he testified that "the knife was open." Vera Grant testified that she wanted the defendant out of her house because she did not want any fussing or fighting there and she could not get him out by herself, and "I asked for some help and he (Nelson) helped me to put him (defendant) out." On cross-examination, she said, "After this shot was fired and this door flew open, and I saw Fox standing on the porch, he didn't attempt to shoot us . . if he wanted to kill somebody, he could have fired right then." There was testimony by the aunt of the defendant that Nelson and others were attacking the defendant and tore his shirt, and Nelson drew a knife and tried to stab him.

The jury found the defendant guilty of shooting at another. Under the evidence the jury could have found the defendant guilty of assault with intent to kill. While there was evidence from which the jury could have found that the defendant was justified, acting in self-defense, yet the jury found the contrary, although they did find that there was no intent to kill. A verdict that the defendant was justified in shooting at the prosecuting witness Nelson was not demanded, and the verdict rendered, that the defendant was guilty of shooting at another with a pistol, was authorized by the evidence and was not contrary to law for any reason. A person may be found guilty of shooting at another in violation of Code § 26-1702, even though there is evidence from which the jury might have determined that he was guilty of the greater offense of assault with intent to murder. *Loyd v. State*, 26 *Ga. App.* 259 (106 S. E. 601). "A per-

son is guilty of the statutory offense of shooting at another when he, without justification, shoots at another, without the intention of committing murder; and this lack of intention to commit murder may exist from the fact that he shot without any specific intent to kill, or from the fact that if death had ensued from the wound, the homicide under the circumstances surrounding it would not have been murder, but would have been manslaughter in one of its grades." *Fallon* v. *State*, 5 *Ga. App.* 659 (63 S. E. 806). In *Mosley* v. *State*, 11 *Ga. App.* 1, 7 (74 S. E. 569), it was stated: "The point is made that there is no such criminal offense as that of 'shooting another', and that though the defendant could have been convicted of unlawfully shooting *at* another, yet if one unlawfully shoots and hits. another, he would be guilty of assault with intent to murder. . . One may shoot another and still be guilty of the statutory offense of shooting at another. It is not a question of marksmanship, but of intent and motive. A bad marksman may be guilty of assault with intent to murder, or of shooting at another, though his adversary was untouched because the bullet missed the mark. A better marksman may be guilty only of shooting at another, though he shoots down his assailant, if he does not shoot with intent to kill, or if the shooting (though not justifiable) is done in passion, in protecting himself . . against a mere assault and battery. One may be justifiable in shooting his assailant in actual or apparent self-defense, though under different circumstances he would not be justified in shooting even if he missed him. . . The statute penalizing shooting at another was not intended to put a premium on bad marksmanship."

The evidence authorized the verdict and, no error of law appearing, the trial court did not err in overruling the defendant's motion for a new trial as amended.

*Judgment affirmed.* *Townsend and Carlisle, JJ., concur.*